**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------------x

**UNITED STATES OF AMERICA**                    :
                                                :
                                                :
  **-against-**                                 :          **NOTICE OF MOTION**
                                                :
**ANDREW N. YAO,**                              :          **Crim. Action No. 06-27**  ℓ-m5
                                                :
                    **Defendant.**              :
-------------------------------------------------------------x

    **PLEASE TAKE NOTICE**, that upon the annexed affidavit of **MARC AGNIFILO**,

duly sworn to on this 12th day of October 2006, and the exhibits appended thereto, as

well as the accompanying **Memorandum of Law**, and upon all proceedings heretofore

had herein, the undersigned, on behalf of the Defendant, Mr. Andrew Yao, will move

this court, before the Honorable Gregory M. Sleet, on a date and a time to be

determined by the Court, for an order granting the following relief:

        a)      Dismissing Counts 1 – 11 of the Indictment for insufficient venue;

        b)      Dismissing Count 12 for being legally insufficient;

        c)      Ordering that the label "money laundering" be removed from
                  Counts 11 and 12;

        d)      Directing the Government to continue to turn over discovery;

        e)      Permitting the defendant to make additional motions.

MARC AGNIFILO
BRAFMAN & ASSOCIATES, P.C.
*Attorney for Andrew N. Yao*
767 Third Avenue, 26th Floor
New York, New York 10017
(212) 750-7800

2006 OCT 13  PM 2: 31

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

Dated: New York, New York
        October 12, 2006

TO:

Honorable Gregory M. Sleet
Benjamin Brafman, Esq.
AUSA Shannon Hanson
Clerk of Court
Mr. Andrew N. Yao

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------------x

**UNITED STATES OF AMERICA**                          :
                                                      :
                                                      :
     **-against-**                                    :    **ATTORNEY AFFIDAVIT**
                                                      :
**ANDREW N. YAO**                                     :    **Criminal Action No. 06-27**
                                                      :
             **Defendants.**       :

-------------------------------------------------------------x

STATE OF NEW YORK        )
                         )    ss:
COUNTY OF NEW YORK       )

    MARC AGNIFILO, being duly sworn, deposes and states:

1.    I am an attorney duly admitted to the practice of law in the State of New York,

and am admitted in various United States District Courts;

2.    I, along with the law firm of Brafman and Associates, located at 767 Third

Avenue, New York, New York, represent the Defendant, Andrew N. Yao, in connection

with the above-captioned Indictment and I am fully familiar with the facts of this case;

3.    This affidavit is respectfully submitted in support of the Defendant's pretrial

motions as more fully set forth in the accompanying Notice of Motion and Memorandum

of Law;

4.    The information contained in this affidavit is based on information and belief, the

source of which is counsel's investigation, a review of the voluminous materials

submitted by the Assistant United States Attorney, including Grand Jury testimony,

exhibits and other materials, discussion with other individuals, including the assigned

AUSA and personal knowledge;

## THE INDICTMENT

5.     Mr. Yao was charged in a fourteen count Indictment, a copy of which is attached hereto as Exhibit A;

6.     Of the fourteen counts, nine counts allege criminal conduct that took place in the Eastern District of Pennsylvania (hereinafter "EDPA"). The EDPA counts are as follows: 2, 4, 5, 6, 7, 8, 9, 10 and 11. In regard to the remaining five counts, specifically counts 1, 3, 12, 13 and 14, the Indictment alleges that the criminal activity underlying the count took place within the District of Delaware and elsewhere;

7.     Of the fourteen counts, eight (1, 2, 3, 4, 5, 6, 8 and 9) charge a violation of Title 18, United States Code, Section 1014, which proscribes the making of a false statement for the purpose of influencing the actions of a bank; two counts (11 and 12) charge that Mr. Yao engaged in a monetary transaction in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957; two counts (13 and 14) charge Mr. Yao with making false statements in connection with a Title 11 Bankruptcy proceeding, in violation of Title 18, United States Code, Section 152(2); count 7 charges mail fraud, in violation of Title 18, United States Code, Section 1341 ; and count 10 charges wire fraud, in violation of Title 18, United States Code, Section 1343;

### *The EDPA Counts - 2, 4, 5, 6, 7, 8, 9, 10 and 11*

8.     Count Two alleges that "in or about August 1998, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union of Georgia..."

2

9.    Count Four alleges that "in or about October 1998, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union of Georgia..."

10.    Count Five alleges that "in or about December 1999, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank..."

11.    Count Six alleges that "in or about November 2000, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank..."

12.    Count Seven alleges that "on or about May 17, 2001, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein," committed the crime of mail fraud.

13.    Count Eight alleges that "in or about March 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank..."

14.    Count Nine alleges that "in or about March 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank..."

15.    Count Ten alleges that "on or about June 24, 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, committed the crime of wire fraud.

16.    Count Eleven alleges that "on or about June 26, 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly

3

engage...in a monetary transaction through a financial institution, in criminally derived

property,...such property having been derived from a specified unlawful activity,"

specifically the wire fraud of Count Ten.

17.    In regard to counts 2, 4, 5, 6, 7, 8, 9, 10 and 11, there is no allegation, nor could

there be such an allegation, that any of the criminal conduct took place within the

District of Delaware.  Accordingly, for the reasons set forth more fully in the

accompanying memorandum of law, those counts should be dismissed for improper

venue;

### Counts One and Three –Wilmington Trust of Pennsylvania

18.    Count One charges that in or about August 1998, Mr. Yao made a false

statement to Wilmington Trust of Pennsylvania (hereinafter "WTPa") by providing a

personal financial statement to a representative of the bank that contained inaccurate

information.   Count Three charges that in September 1998, Mr. Yao made a second

false statement to WTPa by telling a WTPa representative that Mr. Yao had a certain

relationship with principals of a Colorado-based bank called "BestBank," and that such

representations were false.  Although both Count One and Count Three allege that Mr.

Yao committed the charged conduct within the District of Delaware, the Government's

basis for this allegation is not clear.  Accordingly, relevant aspects of the Government's

investigation, including the Grand Jury testimony of a key WTPa representative, will be

briefly set forth.

19.    On January 24, 2006, an individual named Kevin Boyer testified in the Grand

Jury.  Mr. Boyer testified that between May 1998 and April 2001, he worked for

Wilmington Trust of Pennsylvania.  (G.J. Test. – Boyer, p. 4).  He explained that WTPa

4

"had pretty much one branch." (p.4). Originally, the office was located in West Chester, Pennsylvania, and in about the Summer of 1999, the office moved to Villanova, Pennsylvania. (p's 4-5). According to Boyer, in 1998, Mr. Yao "came to Wilmington Trust...seeking a warehouse line of credit," and spoke directly to Boyer, who was the commercial lender. (p. 5). Although Boyer does not explicitly testify that this meeting took place at WTPa's office in Pennsylvania, it is clear from the context of the questioning that indeed Yao spoke with Boyer in Pennsylvania. Boyer explained that he spoke with Yao because Boyer was responsible for doing the "due diligence" on the loan application. (p.6)

20.    After Boyer received the necessary information from Yao, including Yao's unsigned Personal Financial Statement, Boyer made a presentation to the Wilmington Trust Loan Committee on September 30, 1998 (p. 7). Since the Loan Committee was located in Wilmington, Delaware, Boyer traveled from his office in Pennsylvania to Delaware to attend the meeting and make the presentation. As part of Boyer's presentation to the committee, Boyer prepared an "Intra-Company Memorandum" which set forth financial information he received from Mr. Yao. Additionally, Boyer provided to "key members" of the Loan Committee in Delaware the Personal Financial Statement that Yao had given to Boyer when the two men met for lunch in Pennsylvania. (p's 9 and 11). After receiving this information from Boyer, the loan committee approved the loan. (p. 10). At no time did Mr. Yao meet with, speak with, or have any dealings with, the loan committee, nor did Mr. Yao ever set foot in Delaware, nor have a telephone conversation with anyone in Delaware, in connection with this loan application.

Moreover, there is nothing in the voluminous materials provided by the Government to suggest otherwise.

21.    Boyer then reviewed for the Grand Jury a second aspect of the WTPa loan application, dealing with oral statements allegedly made by Mr. Yao in regard to his association with the principals of a bank based in Boulder, Colorado called BestBank. The allegedly fraudulent statement regarding BestBank is charged in Count Three, which alleges that "defendant told K.B. (presumably Kevin Boyer)...that SFC's and Yao's relationship with Bestbank and its principals was limited to BestBank's purchase of certain SFC student loans, when...in fact..." SFC had purchased 20,000 shares of BestBank stock, and in addition that Mr. Yao had a business relationship with Jack Grace, former BestBank CFO, and had issued at least $27,500 in consulting payments to Grace.  The evidence underlying this count is confined to the recollection of Kevin Boyer, who testified in the Grand Jury as follows: "(Question) "So is it your testimony that, after reading the Wall Street Journal article[1], you called up Andrew Yao?" (Answer) "Yes." (Question)  "And you asked him what SFC's affiliation was with Best-Bank if any?"  (Answer) "Yes."  (Question)  "And what did he tell you?"  (Answer)  "He told us that he had just sold some loans in the past to them."  (Question)  "Did he further tell you that neither he nor SFC had any connection to BestBank?"  (Answer)  "Pretty much, yes, other than the loan sale."  (Question)  "Right, other than the loan sale." (Answer)  "Right" (Question)  "Did he further tell you that neither he nor SFC had any connection, again, other than the loan sale –"  (Answer)  "No."  (Question) "—to the

---

[1] According to Boyer, the Wall Street Journal published a front-page article on September 1, 1998 that was highly unfavorable to BestBank.  Since Yao had mentioned BestBank to Boyer in the weeks leading up to the Journal article, when Boyer read the article, he phoned Yao.

principals of BestBank." (Answer) "No." (Question) No, he didn't tell you that?" (Answer) "No. He did not tell us that – he did not –he told us that his affiliation with BestBank was just the loan sale. He did not say, I have a relationship with the principals of BestBank. He did not say, I have an interest in BestBank, other than they were just simply, you know, a purchaser." (Question) "Just so the record is clear, did he deny any other connection with BestBank or its principals?" (Answer) "No, He did not deny. We did not ask. It was, you know, question that wasn't asked and he didn't answer. He did not volunteer any information."

22.     Based on this telephone conversation, Boyer wrote in the September 30, 1998 Intra-Company Memo to the Loan Committee, "SFC and it's principal have no connection to BestBank or its principals, other than the aforementioned loan sale." However, as Boyer's Grand Jury testimony made clear, Boyer failed to ask Yao about Yao's connection to BestBank and its principals.   There is no evidence that Yao misrepresented this connection to Boyer or anyone from WTPa.  Indeed, as Boyer testified, Yao "wasn't asked and he didn't answer. He did not volunteer any information." In light of Boyer's testimony, it appears that Boyer's statement in the memo to the Loan Committee is nothing more than an unsubstantiated conclusion that he reached without making the appropriate inquiry.   Nonetheless, Mr. Yao is charged in Court Three with making false statements to WTPa in regard to his connection with BestBank principals.

Count Twelve – Engaging in an Unlawful Monetary Transaction

23.     As mentioned earlier, Counts 11 and 12 charge Mr. Yao with making two unlawful monetary transactions.  Each count relates to an alleged wire fraud that is

7

charged as Count 10. More specifically, Count 10 charges that Mr. Yao defrauded
Wachovia Bank in connection with the refinance of a home located in Nantucket, which
is located within the District of Massachusetts. During the course of this alleged fraud,
the Government claims a wire transmission was sent. Therefore, the Government
charged the fraud on Wachovia as a wire fraud, in violation of Title 18, United States
Code, Section 1343.

24.     The indictment then charges two independent financial transactions, which are
charged as Counts 11 and 12 respectively, involving the proceeds of the Wachovia
Bank wire fraud charge in Count 10. These transactions are charged as violations of
Section 1957. The Government is simply charging that Mr. Yao engaged in a monetary
transaction using the funds from the Wachovia Bank fraud. Significantly, the
Government is not alleging in Counts 11 and 12 that Mr. Yao sought to launder any of
the money related to the Wachovia fraud, nor that he had the criminal intent to violate
any of the provisions of Section 1956.

25.     Count 11 charges that on or about June 26, 2002, Mr. Yao caused a Nantucket
Bank employee to wire transfer $990,426.98 in proceeds that the Government is
claiming were related to the Wachovia Bank fraud. This wire went from an account
maintained at Nantucket Bank to an account at Citizen/Mellon Bank which belonged to
Mr. Yao and his wife. It is specifically alleged that this conduct took place within the
Eastern District of Pennsylvania.

26.     Count 12 then charges that on July 12, 2002, a $15,500 online payment was
made from the Yao's Citizen/Mellon Account to a MBNA America MasterCard Account.
This charge alleges nothing more than that Mr. Yao was paying his credit card bill and

8

that he did so with family funds from the Citizen/Mellon Account. However, because a certain amount of the proceeds of the alleged Wachovia Bank fraud had previously been wired into that account, the Government is claiming that by paying his credit card bill, Mr. Yao committed a federal felony. The Government claims that this conduct took place, at least in part, within the District of Delaware because the offices of MBNA are located in Wilmington Delaware.

27.   For reasons set forth in the attached Memorandum of Law, the Court is respectfully being asked to dismiss Count 12 because the Government simply cannot prove that the funds used to pay Mr. Yao's credit card are the same funds that passed into the Citizen/Mellon Account from the alleged Wachovia Bank fraud. Based upon information and belief, the Citizen/Mellon Account had far in excess of the $990,426.98 wired into it from the refinance of the Nantucket home. Accordingly, it will be impossible for the Government to prove that Mr. Yao paid his credit card with proceeds from the Wachovia bank wire fraud.

28.   As will be shown at length in the attached Memorandum of Law, the undersigned is aware that the law in the area of commingled funds and their affect on a charge under Section 1957 is still unsettled. However, as will be further argued, given the small size of the challenged transaction here, $15,500, the Government will not be able to meet its burden of proof as a matter of law.

29.   Additionally, the Indictment uses the label "money laundering" to name the conduct alleged in Counts 11 and 12. However, Mr. Yao simply is not charged with money laundering in those counts, or indeed, in any count of the indictment. The term money laundering refers to a violation of Title 18, United States Code, Section 1956.

9

Indeed, Congress provided that statute with the name or label of "Laundering of Monetary Instruments." When the term money laundering is used, especially in something as technical as an indictment, such is a reference to a violation of Section 1956. On the other hand, an offense under Section 1957 has been given the name and title, "Engaging in monetary transactions in property derived from specified unlawful activity." As stated in the Memorandum of Law, the defendant has no objection to the use of labels generally in the indictment, so long as the label is the one used by Congress in naming the statute.

30.    The use of the label money laundering for conduct that is not in fact money laundering is prejudicial, inaccurate and should not be permitted. Money laundering has an entirely different meaning and connotation than the conduct made illegal by Section 1957. It connotes a degree of criminal intent that is simply lacking from a Section 1957 charge, and would be confusing to a juror considering defendant's guilt or non-guilt on these counts. Accordingly, the label money laundering should be removed from Counts 11 and 12.

Remaining Points

31.    The Government has already provided a great deal of discovery, including grand jury testimony and exhibits and other materials. It is anticipated that the Government will continue this practice without need to seek judicial intervention. Therefore, at this time, the defendant simply reminds the Government of its obligation to provide evidence that may be material to the issue of guilt or punishment in regard to any of the charged offenses.

## CONCLUSION

For the reasons stated above and in the accompanying memorandum of law, Mr.

Yao respectfully requests that Counts 1 – 11 de dismissed for insufficient venue in the

District of Delaware; that Count 12 be dismissed; that the title or label of money

laundering be removed from the Section 1957 offenses in Counts 11 and 12; that the

Court order the Government to turn over the requested and required discovery; and that

he be permitted to make additional motions that may become necessary as a result of

further discovery.


MARC AGNIFILO, ESQ.
BRAFMAN & ASSOCIATES, P.C.
*Attorney for Andrew N. Yao*
767 Third Avenue, 26th Floor
New York, New York 10017
(212) 750-7800


Sworn to before me this
12th day of October, 2006


Notary Public

MARK M. BAKER
Notary Public, State of New York
No. 02BA 4502281
Qualified n Bronx County
Commission Expires 2/28/10

11

REDACTED

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,           )
                                    )
              Plaintiff,            )
                                    )
        v.                          )        **Criminal Action No. 06- 27**
                                    )
ANDREW N. YAO,                      )
                                    )
              Defendant.            )

```
F I L E D

MAR 2 8 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### Introduction: Facts Common To All Counts

1.    At all times material to this Indictment, defendant Andrew N. Yao was the president and sole shareholder of Student Finance Corporation ("SFC"), a closely-held Pennsylvania corporation operating in Newark, Delaware. SFC was in the business of funding and servicing student loans, with a particular emphasis on loans to trade school students.

2.    From the early 1990s through 2002, Yao hired T.W., an accountant, now deceased, to prepare fraudulent financial documents, including fraudulent IRS Forms 1040 and Forms 1120, fraudulent Forms W-2, fraudulent Personal Financial Statements, and fraudulent corporate Financial Statements. These fraudulent documents (collectively "the Fraudulent Financial Documents") included the following: (a) Forms 1040 joint personal tax returns for Yao and Lore Yao, his wife, for the tax years 1996, 1997, 1998, 1999, and 2000; (b) Forms W-2 or 1099 for the tax years 1996, 1997, and 1998, documenting income allegedly earned by Yao during the years in question; (c) Personal Financial Statements for Yao as of December 31, 1997, 1998, 1999, and 2000, purporting to represent Yao's personal net worth as of the relevant reporting period; (d) Forms 1120 for SFC

for the years 1998 and 1999; and (e) Financial Statements for SFC comparing the years 1999 and 2000, purporting to represent an auditor's review of SFC's books and records for the represented period. The Forms 1040 and 1120 prepared by T.W. were not true copies of, and in fact differed materially from, those Forms 1040 and 1120 filed by Yao and SFC with the IRS.

## COUNT 1 (False Statement - 18 U.S.C. Section 1014)

3.      At all times material to this Indictment, SFC Financial I, LLC ("SFC Financial") was a Delaware limited liability company. SFC owned 99.99% of SFC Financial.

4.      In or about August 1998, Yao approached Wilmington Trust of Pennsylvania ("Wilmington Trust of PA") seeking a line of credit for SFC Financial, for the stated purpose of originating student loans. Yao's personal guaranty of repayment of the loan was a pre-condition of Wilmington Trust of PA's approval of the line of credit.

5.      In or about August 1998, in the District of Delaware and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of Wilmington Trust of PA, an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with the application for a $25,000,000 line of credit, in that he provided to Wilmington Trust of PA a Personal Financial Statement for Andrew N. Yao as of December 31, 1997, prepared by T.W., which stated (a) that the defendant's assets included restricted securities in Century Financial Services, Inc., with a book value of $2,216,588; (b) that the value of the defendant's ownership interest in real estate in Bryn Mawr, Pennsylvania was $1,700,000 with a mortgage of $743,986; and (c) that the defendant's liabilities were $3,842,239, when, in truth and in fact, as the defendant well knew, (a) the defendant had no stock ownership interest in Century Financial Services, Inc. in December 1997; (b) the defendant had no personal ownership interest in the real estate in Bryn Mawr,

2

Pennsylvania; and (c) the defendant had a $600,000 line of credit with First Union National Bank of Georgia ("First Union of Georgia"), which was omitted from the schedule of liabilities on the December 31, 1997 Personal Financial Statement, all in violation of 18 U.S.C. Sections 1014 and 2.

## COUNT 2 (False Statement - 18 U.S.C. Section 1014)

6.    In or about August 1998, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union of Georgia, an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with his application for a $920,000 line of credit, in that (1) upon request for tax returns Yao provided to First Union of Georgia a 1997 Form 1040 tax return prepared by T.W. when, in truth and in fact, as the defendant well knew, the 1997 Form 1040 tax return prepared by T.W. was not a true copy of, and in fact differed materially from, the 1997 Form 1040 that Yao filed with the IRS; and (2) he provided to First Union of Georgia a Personal Financial Statement as of December 31, 1997 for Andrew N. Yao, prepared by T.W., which stated (a) that the defendant's assets included restricted securities in Century Financial Services, Inc., with a book value of $2,216,588 and (b) that the value of the defendant's ownership interest in real estate in Bryn Mawr, Pennsylvania was $1,700,000 with a mortgage of $743,986, when, in truth and in fact, as the defendant well knew, (a) the defendant had no stock ownership interest in Century Financial Services, Inc. in December 1997 and (b) the defendant had no personal ownership interest in the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

3

**COUNT 3 (False Statement - 18 U.S.C. Section 1014)**

7.    In the 1990s BestBank was a state-chartered financial institution located in Boulder,

Colorado. In July 1998, the Colorado State Banking Commissioner and the FDIC determined

that the value of certain credit card loans maintained as an asset in BestBank's books and records

was materially overstated. Because BestBank's liabilities to its depositors exceeded the value of

its other assets, it was insolvent, and, on July 23, 1998, the FDIC was appointed receiver of

BestBank.

8.    In or about September 1998, in the District of Delaware and elsewhere, Andrew N.

Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the

action of Wilmington Trust of PA, an institution the accounts of which were insured by the

Federal Deposit Insurance Corporation, in connection with the application for a $25,000,000 line

of credit, in that the defendant told K.B., a representative of Wilmington Trust of PA, that SFC's

and Yao's relationship with BestBank and its principals was limited to BestBank's purchase of

certain SFC student loans when, in truth and in fact, as the defendant well knew, (a) the

defendant signed Subscription and Preferred Stock Sale Agreements on or about September 25,

1997 wherein SFC purchased 20,000 shares of BestBank stock for $500,000; and (b) the

defendant previously had, and continued in September 1998 to have, a business relationship with

principals of BestBank and its affiliated companies, including the defendant's relationship with

Jack Grace, former BestBank CFO, whereby SFC issued at least $27,500 in consulting payments

to Grace during the period August 6, 1998 through October 16, 1998, all in violation of 18

U.S.C. Sections 1014 and 2.

4

## COUNT 4 (False Statement - 18 U.S.C. Section 1014)

9.    In or about October 1998, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank of Georgia ("First Union of Georgia"), an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with his application for a $1,850,000 line of credit, in that (1) upon request for tax returns Yao provided to First Union of Georgia a 1997 Form 1040 tax return prepared by T.W. when, in truth and in fact, as the defendant well knew, the 1997 Form 1040 tax return prepared by T.W. was not a true copy of, and in fact differed materially from, the 1997 Form 1040 that Yao filed with the IRS; and (2) he provided to First Union of Georgia a Personal Financial Statement as of December 31, 1997 for Andrew N. Yao, prepared by T.W., which stated (a) that the defendant's assets included restricted securities in Century Financial Services, Inc., with a book value of $2,216,588; and (b) that the value of the defendant's ownership interest in real estate in Bryn Mawr, Pennsylvania was $1,700,000 with a mortgage of $743,986, when, in truth and in fact, as the defendant well knew, (a) the defendant had no stock ownership interest in Century Financial Services, Inc. in December 1997; and (b) the defendant had no personal ownership interest in the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

## COUNT 5 (False Statement - 18 U.S.C. Section 1014)

10.    In or about December 1999, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank ("First Union"), an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with his

5

application for a $3,000,000 line of credit, in that (1) upon request for tax returns Yao provided

to First Union a 1998 Form 1040 tax return prepared by T.W. when, in truth and in fact, as the

defendant well knew, the 1998 Form 1040 tax return prepared by T.W. was not a true copy of,

and in fact differed materially from, the 1998 Form 1040 that Yao filed with the IRS, and (2) he

provided to First Union a Personal Financial Statement as of December 31, 1998 for Andrew N.

Yao, prepared by T.W., which stated that the value of the defendant's personal ownership interest

in real estate in Bryn Mawr, Pennsylvania was $1,799,238 with a mortgage of $736,238, when, in

truth and in fact, as the defendant well knew, the defendant had no personal ownership interest in

the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

<center>**COUNT 6 (False Statement - 18 U.S.C. Section 1014)**</center>

11.    In or about November 2000, in the Eastern District of Pennsylvania and elsewhere,

Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of

influencing the action of First Union National Bank ("First Union"), an institution the accounts

of which were insured by the Federal Deposit Insurance Corporation, in connection with his

application for a $1,000,000 line of credit, in that (1) upon request for tax returns Yao provided

to First Union (a) 1998 and 1999 Forms 1040 tax returns, prepared by T.W., when, in truth and

in fact, as the defendant well knew, the 1998 and 1999 Forms 1040 tax returns prepared by T.W.

were not true copies of, and in fact differed materially from, the 1998 and 1999 Forms 1040 that

Yao filed with the IRS; and (b) 1998 and 1999 Forms 1120 tax returns for SFC, prepared by

T.W., when, in truth and in fact, as the defendant well knew, the 1998 and 1999 Forms 1120 for

SFC prepared by T.W. were not true copies of, and in fact differed materially from, the 1998 and

1999 Forms 1120 that SFC filed with the IRS; and (2) Yao provided to First Union a Personal

Financial Statement as of December 31, 1999 for Andrew N. Yao, prepared by T.W., which

<center>6</center>

stated that the value of the defendant's personal ownership interest in real estate in Bryn Mawr, Pennsylvania was $ 1,799,238 with a mortgage of $729,287, when, in truth and in fact, as the defendant well knew, the defendant had no personal ownership interest in the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

<center>**COUNT 7 - Mail Fraud - 18 U.S.C. Section 1341**</center>

### Introduction

12.    At all times material to this Indictment, DCC I Aircraft Corporation, formerly DCC Aircraft Corporation (collectively "DCC I"), was a Delaware corporation which held the ownership interest in a 1978 Gates Learjet Model 35A, serial number 212, Federal Aviation Number N989AL ("the Lear Jet").

13.    DCC I purchased the Lear Jet through a loan applied for by Yao and given by CIT Group/Equipment Financing, Inc. ("CIT") on or about September 23, 1999 for $3,890,216 ("the CIT Loan"). On or about September 23, 1999, Yao executed a personal guaranty for repayment of the CIT Loan in the event of default by DCC I.

14.    DCC II Aircraft Corporation ("DCC II") was a Delaware corporation which, from in or about June 2001, held the ownership interest in a Hawker-Siddeley Model HS 125 Series 700A Aircraft, serial number NA0243, Federal Aviation Number N104JG (the "Hawker-Siddeley Aircraft").

15.    DCC II purchased the Hawker-Siddeley Aircraft through a loan applied for by Yao and given by U.S. Bancorp Leasing & Financial, Inc. ("U.S. Bancorp") on or about June 12, 2001 (the "U.S. Bancorp Loan") for $4,300,000. On or about June 5, 2001, Yao executed a personal guaranty for repayment of the U.S. Bancorp Loan in the event of default by DCC II.

<center>7</center>

16.    At all times material to this Indictment, Yao was the sole shareholder of DCC I and DCC II and was President of both corporations.

### Scheme to Defraud U.S. Bancorp

17.    From on or about May 15, 2001 through on or about June 13, 2001, Andrew N. Yao, defendant herein, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property from U.S. Bancorp by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means

18.    Throughout the application process for the U.S. Bancorp Loan, the defendant would and did provide U.S. Bancorp with a Personal Financial Statement of Andrew N. Yao as of December 31, 2000 that materially misrepresented and overstated his income and the value of his assets and failed to disclose the extent of his liabilities and his financial obligations, including his personal guaranty for repayment of the CIT Loan.

19.    Upon request, the defendant would and did provide U.S. Bancorp with Forms 1040 for the tax years 1998, 1999, and 2000, prepared by T.W., which, as the defendant well knew, were not true copies of, and in fact differed materially from, the 1998, 1999 and 2000 Forms 1040 Yao filed with the IRS.

20.    The defendant would and did provide U.S. Bancorp with financial statements for SFC comparing the years 1999 and 2000, prepared by T.W., which, as the defendant well knew, were not true copies of, and in fact differed materially from, the financial statements prepared by SFC's auditors.

8

**Charging Paragraph**

21.    On or about May 17, 2001, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property from U.S. Bancorp by means of false and fraudulent pretenses and representations and promises, as more fully set forth in paragraphs 12 through 20 of this Indictment, incorporated herein by reference, did deposit and cause to be deposited materials to be sent and delivered by private commercial carrier for the purpose of executing such scheme and artifice to defraud, to wit, a package sent via private commercial carrier to S.G., U.S. Bancorp, in Boca Raton, Florida, enclosing a letter from the defendant and attachments prepared by T.W., including (1) a Personal Financial Statement of Andrew N. Yao as of December 31, 2000; (2) Forms 1040 for the tax years 1998, 1999 and 2000; and (3) SFC financial statements comparing the years 1999 and 2000, all in violation of Title 18, United States Code, Sections 1341 and 2.

**COUNT 8 (False Statement - 18 U.S.C. Section 1014)**

22.    In or about March 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank ("First Union"), an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with his application for a $5,853,000 term loan, in that (1) upon request for tax returns Yao provided to First Union a 2000 Form 1040 tax return, prepared by T.W., when, in truth and in fact, as the defendant well knew, the 2000 Form 1040 tax return prepared by T.W. was not a true copy of, and in fact differed materially from, the 2000 Form 1040 that Yao filed with the IRS; and (2) he provided to First Union a Personal Financial Statement as of December 31, 2000 for Andrew N.

9

Yao, prepared by T.W., which stated (a) that the defendant's investment income from "Sub Chapter S Corp" was $20,911,486; and (b) that the value of the defendant's ownership interest in real estate in Bryn Mawr, Pennsylvania was $1,799,238 with a mortgage of $729,287, when, in truth and in fact, as the defendant well knew, (a) the defendant's income listed on K-1s filed with the IRS for 2000 was -$9,300,261 and the Schedule D filed by Yao with the IRS for 2000 listed Subchapter S distributions of $3,250,000; and (b) the defendant had no personal ownership interest in the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

### COUNT 9 (False Statement - 18 U.S.C. Section 1014)

23.    In or about March 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly make a false statement for the purpose of influencing the action of First Union National Bank ("First Union"), an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with his application for a $6,288,000 term loan, in that (1) upon request for tax returns Yao provided to First Union a 2000 Form 1040 tax return prepared by T.W. when, in truth and in fact, as the defendant well knew, the 2000 Form 1040 tax return prepared by T.W. was not a true copy of, and in fact differed materially from, the 2000 Form 1040 that Yao filed with the IRS; and (2) he provided to First Union a Personal Financial Statement as of December 31, 2000 for Andrew N. Yao, prepared by T.W., which stated (a) that the defendant's investment income from "Sub Chapter S Corp" was $20,911,486; and (b) that the value of the defendant's ownership interest in real estate in Bryn Mawr, Pennsylvania was $1,799,238 with a mortgage of $729,287, when, in truth and in fact, as the defendant well knew, (a) the defendant's income listed on K-1s filed with the IRS for 2000 was - $9,300,261 and the Schedule D filed by Yao with the IRS for 2000 listed

10

Subchapter S distributions of $3,250,000; and (b) the defendant had no personal ownership interest in the real estate in Bryn Mawr, Pennsylvania, all in violation of 18 U.S.C. Sections 1014 and 2.

<div align="center">

**COUNT 10 (Wire Fraud - 18 U.S.C. Section 1343)**

</div>

**Introduction**

24.    On or about August 14, 2000, the defendant Andrew N. Yao and Lore Yao ("the Yaos") acquired title to real property in Nantucket, Massachusetts (hereinafter "the Nantucket Property"). To finance the purchase of the Nantucket Property, the Yaos executed a Note and Mortgage for $2,000,000.

25.    On or about April 26, 2002, SFC and Yao received a copy of a civil complaint filed by SWH Funding Corp. ("SWH") against both SFC and Yao, in his personal capacity, in the case captioned *SWH Funding Corp. v. Student Finance Corporation and Andrew N. Yao,* in the Superior Court of New Jersey for Bergen County.

26.    On or about May 1 and May 10, 2002, Yao met with representatives of Wilmington Trust of PA to discuss SFC's business and the collateral for the $25,000,000 line of credit with Wilmington Trust of PA. During the meeting on May 10, 2002, Yao acknowledged his obligation to personally guarantee repayment of the $25,000,000 line of credit.

27.    On or about May 29, 2002, Wilmington Trust of PA notified SFC Financial and Yao that SFC Financial was in default of its obligations. Accordingly, Wilmington Trust of PA made separate written demands on both SFC Financial and Yao, as personal guarantor, for repayment in full of the balance of the $25,000,000 line of credit.

28. On or about June 3, 2002, the defendant and Lore Yao quitclaimed the deed to the Nantucket Property to Lore Yao's sole ownership. That deed was registered with the Nantucket County, Massachusetts Registry of Deeds on June 5, 2002.

29. On June 5, 2002, SFC was forced into bankruptcy.

### Scheme and Artifice to Defraud - The Nantucket Property

30. From on or about May 28, 2002 through on or about June 26, 2002, Andrew N. Yao, defendant herein, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money from Wachovia Mortgage Corporation ("Wachovia Mortgage") for the stated purpose of refinancing the mortgage on the Nantucket Property.

31. It was part of the scheme and artifice to defraud that, throughout the loan application process, the defendant would and did fail to disclose to Wachovia Mortgage (1) the existence of the legal action taken against him by SWH, (2) his obligations to Wilmington Trust of PA pursuant to his personal guaranty on the $25,000,000 line of credit, and (3) SFC's June 5, 2002 bankruptcy.

32. It was part of the scheme and artifice to defraud that, throughout the loan application process, the defendant would and did knowingly provide materially false and fraudulent financial documents prepared by T.W. to Wachovia Mortgage.

### Manner and Means

33. In furtherance of this scheme and artifice to defraud, the defendant committed and caused to be committed the following acts:

34. On or about May 28, 2002, the defendant signed and submitted a Uniform Residential Loan Application to Wachovia Mortgage for the purpose of obtaining a loan in the principal amount of $3,000,000, secured by, and to refinance an existing $2,000,000 loan on, the

12

Nantucket Property ("the 2002 Nantucket Property Refinance"). The 2002 Nantucket Property Refinance was a "cash out" refinance, whereby the mortgage loan on the Nantucket Property was increased to $3,000,000 and the cash not used to pay off the existing $2,000,000 mortgage was remitted to the defendant and Lore Yao.

35.    On or about May 28, 2002, on the Uniform Residential Loan Application for the 2002 Nantucket Property Refinance, in part VIII entitled "Declarations," the defendant answered "no" to the following three questions: "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?" "Are you a co-maker or endorser on a note?" and "Are you a party to a lawsuit?"

36.    On or about May 28, 2002, on the Uniform Residential Loan Application for the 2002 Nantucket Property Refinance, the defendant certified that all statements contained therein, including those Declarations in part VIII, were true and correct when, in truth and in fact, as the defendant well knew, he failed to disclose that he had been sued by SWH and failed to disclose that he was a personal guarantor of the $25,000,000 line of credit to SFC Financial.

37.    On or about May 31, 2002, pursuant to a request for tax returns from a Wachovia Mortgage consultant, the defendant provided or caused to be provided to Wachovia Mortgage, via United Parcel Service to its Waterbury, Connecticut processing center, copies of Forms 1040 tax returns for the years 1999 and 2000 prepared by T.W., when, as the defendant well knew, the 1999 and 2000 Forms 1040 submitted to Wachovia Mortgage were not true copies of, and in fact differed materially from, the 1999 and 2000 Forms 1040 that Yao filed with the IRS.

38.    On or about June 20, 2002, the defendant caused a Wachovia representative to contact T.W. in relation to approval of the 2002 Wachovia Mortgage Refinance for the purpose of confirming the defendant's employment.

13

39.    On or about June 21, 2002, Wachovia Mortgage issued an Official Check payable to "Glidden and Glidden" in the amount of $3,003,187.02 to fund the mortgage loan for the 2002 Nantucket Property Refinance.

### Charging Paragraph

40.    On or about June 24, 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, as more fully set forth in paragraphs 30 through 39 of this Indictment, incorporated herein by reference, did transmit and cause to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals for the purpose of executing such scheme and artifice, to wit, a facsimile to R.G. which included a voided personal check for a Mellon Bank account in the names of Andrew N. Yao and Lore N. Yao, for the purpose of providing Glidden & Glidden, P.C. with the necessary account information for the wire transfer of equity proceeds generated through the 2002 Nantucket Property Refinance, all in violation of 18 U.S.C. Sections 1343 and 2.

### COUNT 11 (Money Laundering - 18 U.S.C. Section 1957)

41.    On or about June 26, 2002, in the Eastern District of Pennsylvania and elsewhere, Andrew N. Yao, defendant herein, did knowingly engage and attempt to engage in a monetary transaction through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, in that the defendant caused a Nantucket Bank employee to wire transfer $990,426.98 from Glidden & Glidden, P.C.'s Corporation Clients' Funds Account at Nantucket Bank to a Citizens/Mellon Bank Account in the names of Andrew N. Yao and Lore N. Yao, such property having been derived from a specified unlawful activity,

14

that is wire fraud, as more fully described in paragraphs 30 through 40 of this Indictment, incorporated herein by reference, in violation of 18 U.S.C. Section 1343, all in violation of Title 18, United States Code, Section 1957.

### COUNT 12 (Money Laundering - 18 U.S.C. Section 1957)

42.    On or about July 12, 2002, in the District of Delaware and elsewhere, Andrew N. Yao, defendant herein, did knowingly engage and attempt to engage in a monetary transaction through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, in that the defendant transmitted or caused to be transmitted a $15,500 online payment from a Citizens/Mellon Bank Account to his MBNA America MasterCard Account, maintained at MBNA America offices in Wilmington, Delaware, such property having been derived from a specified unlawful activity, that is wire fraud, as more fully described in paragraphs 30 through 40 of this Indictment, incorporated herein by reference, in violation of 18 U.S.C. Section 1343, all in violation of Title 18, United States Code, Section 1957.

### COUNT 13 (Bankruptcy Fraud - 18 U.S.C. Section 152(2))

#### Introduction

43.    On June 5, 2002, four trucking schools filed an involuntary petition against SFC in the United States Bankruptcy Court for the District of Delaware, captioned *In re Student Finance Corporation,* Case Number 02-11620 (D. Del.).

44.    On or about August 27 and 28, 2003, Yao was deposed in connection with the SFC bankruptcy. During the deposition on August 28, 2003, Yao was questioned under oath about three wire transfers to payee A.K. from SFC's Operating Account at Wilmington Trust Company totaling $669,000. The three transfers, which were booked as shareholder distributions,

15

consisted of the following: (a) a $75,000 wire transfer on October 10, 2001, (b) a $344,000 wire transfer on October 18, 2001, and (c) a $250,000 wire transfer on November 13, 2001 (the "A.K. Wire Transfers").

**Charging Paragraph**

45. On or about August 28, 2003, in the District of Delaware, Andrew N. Yao, defendant herein, in connection with a case under Title 11 of the United States Code, specifically *In re Student Finance Corporation*, Case Number 02-11620, in the United States Bankruptcy Court for the District of Delaware, knowingly and fraudulently made the following material false statements under oath, to wit, he claimed that the A.K. Wire Transfers totaling $669,000 were for aircraft maintenance, and he claimed that A.K. was a contact person at Wells Fargo when, as the defendant then and there well knew, the payments were not for aircraft maintenance, but were sent to Yao's friend, A.K., and were not related in any way to SFC's business, in violation of Title 18, United States Code, Section 152(2).

**COUNT 14 (Bankruptcy Fraud - 18 U.S.C. Section 152(2))**

46. Paragraph 43 is incorporated herein by reference.

47. During the deposition on August 28, 2003 in connection with SFC's bankruptcy, Yao was questioned under oath about two wire transfers to Las Vegas casinos, specifically a $100,000 wire transfer on December 14, 2001 to Mandalay Bay, and a $50,000 wire transfer on February 15, 2002 to the Bellagio Casino, both transferring funds from SFC's Operating Account at Wilmington Trust Company (collectively "the Las Vegas Wire Transfers").

**Charging Paragraph**

48. On or about August 28, 2003, in the State and District of Delaware, Andrew N. Yao, defendant herein, in connection with a case under Title 11 of the United States Code,

specifically *In re Student Finance Corporation*, Case Number 02-11620, in the United States
Bankruptcy Court for the District of Delaware, knowingly and fraudulently made the following
material false statements under oath, to wit, he claimed that the Las Vegas Wire Transfers
totaling $150,000 were for the benefit of his grandfather and went to pay for family celebrations
and were not used by Yao to gamble because Yao did not gamble, when, as the defendant then
and there well knew, the payments were for the benefit of Yao personally, and were used, in
whole or in part, to fund Yao's gambling activities while staying in Las Vegas on or around
December 14, 2001 and February 15, 2002, in violation of Title 18, United States Code, Section
152(2).

## NOTICE OF FORFEITURE

### Mail Fraud, Wire Fraud and Bankruptcy Fraud

49.    Upon conviction of one or more of the offenses alleged in Counts 7 and 10, 13 and
14 of this Indictment, Andrew N. Yao, defendant herein, shall forfeit to the United States,
pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or
derived from proceeds obtained directly or indirectly as a result of the said violation.

### False Statement on a Loan Application

50.    Upon conviction of one or more of the offenses alleged in Counts 1 through 6, 8
and 9 of this Indictment, Andrew N. Yao, defendant herein, shall forfeit to the United States,
pursuant to 18 U.S.C. § 982(a)(2), any property constituting or derived from proceeds obtained
directly or indirectly as a result of the said violation(s).

### Illegal Monetary Transaction

51.    Upon conviction of one or more of the offenses alleged in Counts 11 and 12 of this
Indictment, Andrew N. Yao, defendant herein, shall forfeit the following property to the United

17

States pursuant to 18 U.S.C. § 982(a)(1): All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

**Substitute Assets**

52.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), Andrew Yao, defendant herein, shall forfeit substitute property up to the value of the property described in the Notice of Forfeiture above, if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL

Grand Jury Foreman

COLM F. CONNOLLY
UNITED STATES ATTORNEY

By: Shannon Thee Hanson
Assistant U.S. Attorney

Dated: March 28, 2006

18