IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 06-27-GMS |
| | ) |
| ANDREW N. YAO, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE**

NOW COMES the United States of America, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Shannon Thee Hanson and Douglas E. McCann, Assistant United States Attorneys for the District of Delaware, and hereby opposes in its entirety defendant Andrew N. Yao's Motion in Limine seeking to exclude certain categories of relevant evidence from the upcoming trial.

Defendant's motion is a thinly-veiled attempt to conceal from the jury key contextual facts that illuminate the circumstances in which the defendant made the fraudulent statements with which he is charged. These facts and circumstances go directly and specifically to proving the defendant's fraudulent intent, the central issue in this trial. Accordingly, the government opposes all of the defendant's requested relief.

At the outset, while the government, in an abundance of caution, noticed the evidence cited by the defendant in his Motion in its February 26, 2007 letter as potentially falling within Federal Rule of Evidence 404(b), counsel particularly "reserve[d] the right to introduce this material under any available and proper evidentiary theory, not limited to Rule 404(b)." Accordingly, this Court's analysis of the admissibility of this evidence falls in the first instance

under Rules 402 and 403. Only two of the pieces of evidence are being offered under Rule 404(b), as set forth below.

**Background**

Andrew N. Yao is charged with two counts of making a false oath or account in connection with a bankruptcy proceeding in violation of 18 U.S.C. § 152(2). Specifically, the defendant is charged with knowingly and fraudulently testifying falsely in a deposition taken in connection with the bankruptcy of the defendant's corporation, Student Finance Corp. ("SFC") on August 28, 2003. SFC was a subchapter S corporation that was in the business of, among other things, originating student loans to students of vocational schools, particularly truck driving schools, packaging those loans as marketable securities, and selling them. In connection with SFC's business, SFC obtained a $25 million line of credit from Wilmington Trust Co. of Pennsylvania, a subsidiary of Wilmington Trust Company ("Wilmington Trust"). That loan was personally guaranteed by the defendant – that is to say, if SFC defaulted on its loan, Wilmington Trust could look to the defendant's personal assets to recover its money. The defendant was the sole shareholder of SFC, and its principal executive for most of the period relevant to this case.

On June 5, 2002, certain creditors of SFC forced SFC into bankruptcy under Chapter 11 of the Bankruptcy Code, in the case captioned *In re Student Finance Corporation,* No. 02-11620 (Bk. D. Del). At the beginning of this bankruptcy case, SFC continued to operate as debtor-in-possession, and the defendant continued to serve as its principal executive officer. After the bankruptcy, on June 5, 2003, Wilmington Trust filed its own lawsuit in the Court of Common Pleas for Montgomery County, Pennsylvania seeking to enforce its personal guaranty against Mr. Yao.

After the commencement of the bankruptcy, Royal Indemnity ("Royal") and the Office of the United States Trustee ("United States Trustee") each filed motions seeking to remove SFC as debtor-in-possession and replace it with an independent trustee or, in the alternative, to convert the case to a Chapter 7 bankruptcy. Royal's motion was filed on June 2, 2003. The United States Trustee's motion was filed on June 25, 2003. One of the principal reasons cited in each motion was that SFC was unfit to remain as debtor-in-possession, because of the allegations regarding the defendant's fraudulent and gross mismanagement of the company.

On August 28, 2003, Alan Gilbert, Esquire, the attorney for Royal, took the defendant's deposition. There were a number of other attorneys present; among them was Eric Freed, Esquire, the attorney for Wilmington Trust in the Court of Common Pleas for Montgomery County, Pennsylvania action concerning the enforcement of the $25 million guaranty. During that deposition, Mr. Gilbert examined the defendant about, among other things, Mr. Yao's request for three wire transfers from SFC's corporate bank account to an "A. Karlsen" and two wire transfers to Las Vegas casinos. The transfers to "A. Karlsen" totaled $669,000; the transfers to the casinos totaled $150,000. Mr. Gilbert will testify at the trial that key purposes of his deposition were (a) to find what had happened to SFC's assets,[1] and (b) to unearth evidence that would support his (and the United States Trustee's) efforts to remove SFC (and Mr. Yao) as debtor-in-possession. Mr. Freed will testify that he was present at the Gilbert deposition to gain information to support both Wilmington Trust's claim against SFC as a creditor in bankruptcy and Wilmington Trust's case seeking to collect on the defendant's personal guaranty.

---

[1] During the period June, 2001 to June, 2002, the defendant received a net of approximately $5.6 million in shareholder distributions from SFC. These transfers were potentially subject to the "look back" provisions of bankruptcy law that allow creditors to pursue recovery of transfers of money involving insiders like Mr. Yao. To the extent the defendant was intentionally diverting money to third parties, creditors such as Wilmington Trust also could seek to undo those transfers as fraudulent conveyances under state law.

During the deposition, Mr. Gilbert asked Mr. Yao what he knew about each of the $669,000 in wire transfers from SFC to "A. Karlsen." Mr. Gilbert asked if Mr. Yao knew who "A. Karlsen" was. Mr. Yao feigned ignorance, and stated that he thought A. Karlsen was possibly an employee of Wells Fargo bank who was connected in some way with the maintenance of two aircraft – a Hawker and a Lear jet owned by an SFC affiliate company. In fact, as Mr. Yao well knew, "A. Karlsen" is Alexandria ("Lexie") Karlsen Wolfe, a former Playboy Playmate with whom the defendant had a relationship. Mr. Yao dated Ms. Karlsen for a period of time (August 2001 to February 2002) prior to the deposition, had attended a 2002 New Year's Eve party at Playboy publisher Hugh Hefner's mansion with her, had given her large sums of money in addition to the wire transfers, and had bought her a house, a car, and other expensive gifts.

During the August 28, 2003 deposition, Mr. Yao was also asked about the transfers of funds from SFC's corporate bank account to the Las Vegas casinos. Mr. Yao acknowledged that the money was sent to the casinos, and that he had been to the casinos with family members, but denied that he personally gambled. At the trial, the government will introduce casino records and Mr. Yao's own statements to show that he did in fact gamble.

Two months later, on October 24, 2003, Eric Freed took Mr. Yao's deposition in connection with Wilmington Trust's lawsuit against Mr. Yao on his personal guaranty of the $25 million line of credit. In that deposition, Mr. Freed asked who A. Karlsen was, and Mr. Yao repeated the same answer he previously had given to Mr. Gilbert. Mr. Freed then asked if Mr. Yao knew who *Lexie* Karlsen was, and Mr. Yao then admitted he knew her. However, the defendant did not admit that he had a personal relationship with her; rather, he claimed that he

4

gave her the $669,000 as an investment in a movie deal. Ms. Karlsen will testify at trial that this is untrue.

**The Defense**

The elements of the bankruptcy fraud counts charged against the defendant are as follows: (1) that on or about the dates alleged in the Indictment there existed a proceeding in bankruptcy in the District of Delaware; (2) that the defendant made a statement under oath in or in relation to that proceeding; (3) that the statement concerned a material fact; (4) that the statement was false; and (5) that the defendant made such statement knowingly and fraudulently.

Recently,[2] the government learned from defense counsel that Mr. Yao's defense would be along the following lines. With respect to the false statements about Lexie Karlsen, the defense will concede that Mr. Yao lied when he said he did not know who A. Karlsen was. Government counsel anticipates the defendant will contend, however, that he did not intend to deceive anyone; rather, he only intended to shield himself from the personal consequences of infidelity to his wife. With respect to his false statements with regard to gambling, the defendant will contend that he told the truth at his deposition when he said that he does not gamble.

The proffered defense, if representations are accurate, would amount to a request for jury nullification, a defense that the Court should not permit.[3] Should the Court allow the defendant

---

[2] In his Motion, the defendant complains that the government noticed this evidence on the "eve" of trial. Mr. McMonagle only recently joined this case, and therefore, understandably, only recently advised the government of the nature of the defense. The government responded to that information as rapidly as it could. In any event, Rule 404(b) provides only that notice be reasonable. Indeed, the Advisory Committee notes to Rule 404 state: "Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case." Another district court in this Circuit approved of a three day notice provision, after reviewing cases that provided for seven, ten, or fourteen days notice. *See United States v. Blackwell*, 954 F. Supp. 944, 968 (D.N.J. 1997).

[3] Although the jury has the power to nullify, it is not a right of the defendant. *United States v. Gonzalez*, 110 F.3d 936, 947-48 (2d Cir. 1997); *United States v. Washington*, 705 F.2d 489, 494

to present such a defense, the government must be allowed to present all admissible evidence of intent because that evidence goes to the heart of the defendant's theory of the case.

**Legal Standards**

Rule 403

Rule 403 permits a trial court to exercise its discretion to exclude otherwise relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." While all evidence offered in support of the government's case is prejudicial to the defendant, the Rule only excludes that which is unfairly prejudicial. As the Advisory Committee Notes to Rule 403 make clear, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." The Committee Notes further suggest that "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." In each case, as discussed below, the probative value of the government's proposed evidence is not substantially outweighed by the danger of unfair prejudice. Indeed, the opposite is true – the absence of the proffered evidence is likely to mislead the jury.

Rule 404(b)

Federal Rule of Evidence 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of

---

(D.C.Cir.1983)("Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power"). Moreover, the court has the power and even the duty to prevent this type of conduct, including preventing counsel from making arguments expressly or impliedly inviting jury nullification. *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993).

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Third Circuit has "recognized that 'Rule 404(b) is a rule of inclusion rather than exclusion'" and in general, it will "favor the admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense." *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (quoting *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003)). A four-part test governs the admissibility of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *Daraio*, 445 F.3d at 264.

**The Motions by Royal and the United States Trustee**

Admissibility of the motions by the United States Trustee and Royal is governed by Rule 403, because the government does not intend to introduce evidence of specific "other acts" of the defendant. Rather, the government seeks to demonstrate that the context for the charged lies in the August 28, 2003 deposition included control of SFC. The August 28, 2003, deposition was not taken in a vacuum, and Mr. Gilbert did not ask questions about "A. Karlsen" or gambling out of idle curiosity.

As discussed above, Royal and the United States Trustee, the agency charged with monitoring the integrity of the bankruptcy system, each independently sought to remove SFC as debtor-in-possession or to convert the case to a Chapter 7 bankruptcy liquidation. To that end, they had each filed motions with the United States Bankruptcy Court for the District of Delaware seeking appointment of an independent trustee in charge of SFC's estate in bankruptcy. Such motions can only be filed pursuant to the grounds set forth in 11 U.S.C. § 1104, which here

included fraud, dishonesty, incompetence and mismanagement by Mr. Yao and the senior management of SFC. The proponent of such a motion bears a heavy burden.

The government does not seek to introduce the motions themselves. Nor does the government seek to introduce any of the specific acts alleged in the motions. Rather, the government seeks merely to introduce (a) the timing and existence of the motions and (b) the specific statutory grounds which formed the basis of the motions. To remove this basic information (the "why" of the motions) is to invite jury speculation about the purpose behind the United States Trustee's and Royal's motions when the motivation was clear and highly relevant to the defendant's intent during the August 28, 2003 deposition: allegations of fraud and gross mismanagement had been raised against SFC's management, particularly Mr. Yao.

Moreover, this information is not being offered by the government for its truth. Rather, it is being offered as evidence of the defendant's state of mind at the time Alan Gilbert took his deposition where he lied as charged – a fundamental component of the government's case where (apparently) only the defendant's intent is in dispute.

Tellingly, the significance of the allegations of misconduct to the defendant's state of mind is best demonstrated by the defendant himself. Several days after the August 28, 2003 deposition, the defendant filed a Declaration with the court in opposition to the United States Trustee's and Royal's motions to remove the debtor-in-possession. In that Declaration the defendant specifically cites his statements (denials) that the $150,000 in wire transfers to casinos were used by him for gambling purposes.

For all these reasons, the probative value of this information regarding the defendant's state of mind is not substantially outweighed by unfair prejudice and should be admitted.

## Yao's Personal Guaranty of the $25 Million Line of Credit with Wilmington Trust

Similarly, the existence of Yao's personal guaranty of SFC's $25 million line of credit with Wilmington Trust should also be admitted. When Mr. Yao was asked by Mr. Gilbert about "A. Karlsen" and gambling, Eric Freed, the lawyer for Wilmington Trust, who was suing Mr. Yao to enforce the defendant's personal guaranty, was sitting in the room. Subsequently, Mr. Yao was deposed by Mr. Freed and confronted about his knowledge of Ms. Karlsen. Mr. Yao then admitted he testified "incorrectly," but claimed that his relationship with Ms. Karlsen was not (as he now apparently admits) personal, but rather it was related to a movie deal. From this partial admission, partial fabrication, the jury can reasonably infer that Mr. Yao's motive was not (as he apparently now will say) to protect himself or his wife but rather to deceive his creditors about his operation of SFC so as to protect his economic interests. The existence of the personal guaranty will be offered to show the purpose for and context of Freed's presence at the Gilbert deposition and his own deposition of Mr. Yao, as well as to show that the defendant knew that Wilmington Trust was seeking to enforce his personal guaranty through any of the defendant's assets, including those distributions forwarded to A. Karlsen and the casinos.

Thus, each of the elements for admissibility under Rule 404(b) is met. The existence of the defendant's personal guaranty of the $25 million line of credit is offered for a proper purpose, to prove the defendant's motive to lie in the context of the bankruptcy, and is highly and probative, particularly to the disputed issue of intent. Indeed, the probative value of this ordinary and voluntary business transaction by Mr. Yao – and its economic ramifications for him - far outweighs the potential, if any, for unfair prejudice. The limited purpose for which the evidence is being offered can be explained (and any prejudice mitigated) by an appropriate limiting instruction.

**Yao's $5.6 Million in Shareholder Distributions from SFC in the Year Prior to Bankruptcy**

For the same reasons, the total net amount of distributions made by SFC to Mr. Yao between June, 2001 and June, 2002 (approximately $5.6 million) should also be admitted. That total included all of the wire transfers made directly to Ms. Karlsen as well as the $50,000 wire transfer to the Bellagio casino. Thus, the charged conduct represents over 10% of all distributions to the defendant in the year before the bankruptcy filing. A significant issue in the August 28, 2003 Yao deposition taken by Mr. Gilbert was the location of SFC's assets. The government will offer testimony that the one year "look back" provision in the bankruptcy code made each of these transactions a relevant area of scrutiny.

Again, this information is relevant and offered for a proper purpose (the issue of the defendant's motive to lie about the location of assets), is probative of his intent, and the probative value of this information outweighs the potential for undue prejudice. (Indeed, the government is unsure what undue prejudice is suffered by the defendant by the admission of this evidence that would not also result from admission at trial of the total sum of distributions to the defendant at any time, pursuant to the defendant's suggestion. The defendant's motion certainly does not suggest any.) Moreover, the government is at a loss to understand the relevance of any shareholder distributions made to Mr. Yao by SFC prior to the one year "look back" period, *i.e.*, prior to June 2001. Accordingly, the government cannot agree to the defendant's "compromise" position of including evidence of all distributions SFC ever made to Mr. Yao. The Court should admit the evidence as proffered by the government pursuant to Rule 404(b).

**Mr. Yao's Relationship With Other Women**

Finally, should the defendant testify, the government also will seek to introduce evidence that Mr. Yao's conduct in giving large sums of cash to women outside his marriage was not

limited to Ms. Karlsen. Rather, Mr. Yao engaged in a pattern and practice of giving money to women affiliated with Playboy and Penthouse, including providing moneys to Victoria Zdrock, Elisa Bridges, Hailey Armstrong, and Erica Lookadoo Jiles, and he lied about these relationships under oath.[4] The government does not, as the defendant claims, seek to smear him. However, the government is entitled to counter his defense that he lied to protect himself by showing that these concerns could not have weighed too much on his mind when he spent large sums on a number of women, most of whom are centerfold models and therefore are public or semi-public figures. Also, this evidence would serve to impeach Mr. Yao's credibility since he denied under oath in his deposition with Mr. Freed that he had ever given property valued at more than $10,000 to a non-family member. In fact, Mr. Yao gave each of these women money far in excess of that amount.

Thus, the evidence would be admitted for proper and relevant purposes (to rebut his defense and to impeach his credibility), and its probative value outweighs its potential for unfair prejudice. Again, the Court can mitigate any prejudice with an appropriate limiting instruction.

WHEREFORE, the government respectfully requests that the Motion in Limine be denied. A form of order is attached.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: /s/
Shannon Thee Hanson
Douglas E. McCann
Assistant United States Attorneys

Dated: March 1, 2007

---

[4] The government notes that the gambling records it will introduce in support of the charged conduct include references to Erica Jiles and to Erica Jiles cashing out approximately $39,000 in gaming chips on Mr. Yao's behalf. The government will not seek to introduce evidence of Mr. Yao's relationship with Ms. Jiles in its case-in-chief.

11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action No. 06-27-GMS |
| ANDREW N. YAO, | ) ) ) |
| Defendant. | ) ) |

**ORDER**

IT IS HEREBY ORDERED this ____ day of March, 2007, that the defendant's Motion in Limine is DENIED.

_____
Honorable Gregory M. Sleet
United States District Judge

## CERTIFICATE OF SERVICE

I, Shannon Thee Hanson, hereby certify that I caused a copy of the forgoing Response to Defendant's Motion in Limine to be served this 1st day of March, 2007, on the following counsel in the manner indicated:

BY FACSIMILE
Brian McMonagle, Esquire
One Penn Square West, Suite 701
Philadelphia, PA 19102
215-981-0977

_____
Shannon Thee Hanson