IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA :
:
v. : Criminal No. 6-27-GMS
:
ANDREW YAO :

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

Defendant, by and through his undersigned counsel, pursuant to this Court's Order dated November 5, 2007, submits this Supplemental Memorandum to address the specific point of whether the Court should apply U.S.S.G. §2B1.1 or U.S.S.G. §2J1.3 in calculating the Defendant's advisory sentencing guideline range.

I. **PROCEDURAL BACKGROUND/INTRODUCTION**

On or about March 14, 2007, after a three (3) day jury trial, Andrew Yao was convicted of two (2) counts of making false statements under oath during a bankruptcy deposition in violation of 18 U.S.C. §152(2). Specifically, the jury convicted Mr. Yao of having made admittedly false statements during an August 28, 2003 deposition in connection with Bankruptcy proceedings in which Student Finance Corporation ("SFC") was the debtor.[1]

The counts of conviction relate to two separate areas of misrepresentation. Count 13 concerned misrepresentations about $669,000 transferred in October, 2001 by SFC to Alexandria Karlsen, with whom Mr. Yao was having an extramarital affair at the time of the transfers.[2]

---

[1] At the time of the deposition, Mr. Yao was SFC's sole shareholder.

[2] These transfers were booked by SFC as shareholder distributions.

Count 14 charged misrepresentations concerning the specific details of SFC transfers made by SFC to Las Vegas casinos.

After conviction, the United States Probation Department prepared a comprehensive Presentence Investigation Report ("PIR") originally dated August 26, 2007. In its August 26, 2007 PIR, the Probation Department incorrectly calculated advisory sentencing guidelines by reference to the fraud guidelines under U.S.S.G. §2B1.1. Thereafter, on or about September 12, 2007, Mr. Yao, through counsel, submitted objections to the August 26, 2007 PIR, which include objections to calculating the guidelines by reference to U.S.S.G. §2B1.1. Mr. Yao argued that the perjury guidelines under U.S.S.G. §2J1.3 apply.

On or about October 12, 2007, the Probation Department issued a revised PIR, in which it calculated Mr. Yao's guidelines by reference to the perjury guidelines set forth in U.S.S.G. §2J1.3 as urged by Mr. Yao. On or about October 24, 2007, the Government wrote the Court and lodged an objection to the Probation Department's use of U.S.S.G. §2J1.3. The Court ultimately scheduled sentencing for November 6, 2007, however, on November 5, 2007, the Court issued an Order directing the parties to brief the issue of "whether the Court should apply U.S.S.G. §2B1.1 or U.S.S.G. §2J1.3 in calculating the defendant's advisory guideline range." The Court also continued sentencing. Mr. Yao submits this Memorandum in support of the Court's directive in this regard.

## II. ANALYSIS

### A. Basic Guideline Application Principles as Applied to this Case and as Interpreted Under the Rule of Lenity Dictate Application of U.S.S.G. §2J1.3 to the Facts of this Case.

Chapter 1 of the United States Sentencing Guidelines contains general/basic guideline application principles. Section 1B1.1 provides the road map for how to apply the guidelines.

The very first step in applying the guidelines requires determination under U.S.S.G. §1B1.2 of the offense guideline section from Chapter 2 (offense conduct) applicable to the offense of conviction. U.S.S.G. §1B1.1(a) In this regard, the guidelines direct as follows:

> (a) Determine the offense guideline section in Chapter 2 (offense conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)
>
> \*   \*   \*   \*   \*
>
> Refer to the statutory index (Appendix A) to determine the Chapter 2 offense guideline, referenced in the statutory index for the offense of conviction

U.S.S.G. §1B1.2(a)

Review of the statutory index reveals that 18 U.S.C. §152, unlike many statutes, is not broken down by its various subsections.[3] The statutory index for 18 U.S.C. §152 refers to three different guideline sections, specifically U.S.S.G. §§2B1.1, 2B4.1 and 2J1.3. Therefore, on its face, reference to the statutory index suggests application of three potentially different guideline sections and is somewhat confusing. However, the Application Notes attempt to address this problem. Specifically, the Application Note 1 provides:

> In the case of a particular statute that prescribes only a single type of conduct, the offense of conviction and the conduct prescribed in statutes will coincide and the statutory index will specify only one offense guideline for that offense of conviction. If in the case of a particular statute that prescribes a variety of conduct that might constitute the subject of different offense guidelines, the statutory index may specify more than one offense guideline for that particular statute, and the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted.

---

[3] Interestingly, 18 U.S.C. §152 codifies at least nine separate offenses which its title categorizes into the following three (3) separate classes: "concealment of assets; false oaths and claims; bribery."

U.S.S.G. §2B1.2, Application 1. Under this Application Note, the Court is charged with determining which of these three theoretically potentially applicable guideline sections is most appropriate for the specific offense conduct charged in this case and for which Mr. Yao has been convicted.

In this instance, the perjury guidelines under U.S.S.G. §2J1.3 clearly apply. First, a plain reading of the statute and charges at issue firmly establish that these are simply counts of perjury occurring within the context of the bankruptcy proceeding. Both counts do nothing more than recount Defendant's falsehood during the August 28, 2003 deposition. Neither count makes any reference to the object of the falsities at issue and/or any particular intent to defraud.

Review of the charging language in light of 18 U.S.C. §152(2) confirms this case to be a simple perjury case. Specifically, 18 U.S.C. §152(2) criminalizes making either a false oath or account in a bankruptcy case. As charged, this case involves nothing other than a false oath. Review of the general perjury statute (18 U.S.C. §1621), to which U.S.S.G. §2J1.3 unquestionably applies, reveals language remarkably similar to the charging language at issue here. Both 18 U.S.C. §152(2) and §1621 require an oath; a knowing false statement to a material matter; and finally, each requires some mens rea. In fact, the perjury statute requires a higher degree of criminal intent than does §152(2) in that §1621 requires that the defendant act wilfully.

As applied in this case, 18 U.S.C. §152(2) is not a fraud and deceit charge or false statement charge to which U.S.S.G. §2B1.1 routinely applies.[4] U.S.S.G. §2B1.1 would likely

---

[4] In its October 24, 2007 letter, the Government actually makes this point. In Footnote 3 of its October 24, 2007 letter, the Government states that there is "precedent within this judicial district for applying U.S.S.G. §2B1.1 in convictions under 18 U.S.C. §152(2)." Specifically, the Government cites *United States v. Linwood Lipscomb*, Cr. No. 05-91-KAJ, in which the District Court applied U.S.S.G. §2B1.1, apparently without objection, in sentencing a defendant convicted of 18 U.S.C. §152(2). However, that case, as reported by the Government, appears to

apply to convictions involving violations of 18 U.S.C. §152(1), 152(3) (depending on the nature of the certification or statement), 152(4), 152(5) while the bribery guideline would apply to violations of §152(6) and (7). In addition, U.S.S.G. §2B1.1 could apply to false account cases under 18 U.S.C. §152(2). However, the fraud and deceit guidelines of U.S.S.G. §2B1.1 certainly do not apply to mere perjury (false "oath") cases.

Rules of statutory construction lend further support Mr. Yao's position. The sentencing guidelines are essentially a statutory subset of the United States Code. On their face, the guidelines are ambiguous regarding the appropriate guideline for conviction under 18 U.S.C. §152. To the extent that some facial ambiguity exists by the reference to three guideline sections for one statute including at least nine potential violations, it appears that the guidelines and particularly the statutory index (the guideline's Bible for determining applicable guideline sections) is ambiguous. When a criminal statute or rule is ambiguous, the rule of lenity requires that it be given the most narrow and defendant favorable reading. *James v. United States*, ___, U.S. ___, 127 S.Ct. 1586, 1603 (2007); *United States v. Walker*, 473 F.3d 71, 84 (3d Cir. 2001). Because the statutory index is facially ambiguous and because that ambiguity is exacerbated in this case, the guidelines should be read to apply in a manner most favorable to Mr. Yao. Hence, application of U.S.S.G. §2J1.3 is mandated.

---

be a false account and not a false oath case and confirms the confusion in determining which guideline section to use in light of a conviction under 18 U.S.C. §152(2). As the facts are represented by the Government, the false accounts in question there were those made in bankruptcy petitions, which themselves were fraudulent because they were filed in the name of the defendant's ex-girlfriend in an effort to forestall foreclosure on his home. There, the defendant made false statements on an actual Bankruptcy Court petition apparently concerning the nature and ownership of assets. In this instance, the defendant's false statements were limited to representations about historical financial transactions made two (2) years earlier.

Finally, in its October 24, 2007 letter to the Court, the Government suggests that the addition of a specific offense characteristic, specifically, U.S.S.G. §2B1.1(b)(8), in November, 2001 somehow establishes that U.S.S.G. §2B1.1 applies in this case. However, the Government, in making this argument, ignores the basic guideline model approach, and that is, under U.S.S.G. §1B1.1 and § 1B1.2(a), the Court must first determine which guideline applies. This would obviously be done without reference to any specific offense characteristic.

If the Court accepts the Government's position that a specific offense characteristic involving a two level enhancement for frauds committed in the context of a bankruptcy somehow justifies application of U.S.S.G. §2B1.1, there could be no case involving conviction under 18 U.S.C where U.S.S.G. §2J1.3 would apply. This obviously cannot be the case given the inclusion of U.S.S.G. §2J1.3 in the statutory index for 18 U.S.C §152.

**B.    The Manner in Which This Case Was Presented/Submitted to the Jury Dictates Application of U.S.S.G §2J1.3.**

In its October 24, 2007 letter, the Government urges application of U.S.S.G. §2B1.1 to the offense of conviction at issue in this case and in doing so, the Government makes reference to fraud, fraudulent intent, fraudulent conduct and the results of fraudulent conduct. As this Court might recall, however, this case was not submitted to the jury, on any legal theory reuiring any fraudulent intent on Mr. Yao's part. As was discussed at length during trial in this case, as well as in Defendant's October 31, 2007 sentencing letter to the Court, the conduct at issue was essentially submitted to the jury on a strict liability theory. In essence, the Court instructed the jury that if Mr. Yao lied, and did so knowingly in the context of a bankruptcy proceeding, he could be convicted under 18 U.S.C. §152(2).

The Court might recall that Mr. Yao, through his trial counsel, urged the Court to include in its instructions to the jury some concept of an intent to defraud in a bankruptcy proceeding.

-6-

Interestingly, the jury keyed in on this very issue. Specifically, after the Court instructed the jury, the jury asked the Court about the following question:

> From a legal perspective, on the fifth element .... with respect to fraudulent and intent to deceive does it matter whether the defendant intended to deceive; i.e., does the intent have to be to commit bankruptcy fraud or could it be for some other reason.

*See*, Trial Transcript, March 14, 2007, p. 564. Ultimately, the Court simply re-instructed the jury and simply stated:

> The fifth element reads that the defendant made such a statement that, that is a false oath or account, knowingly and fraudulently with respect to deceive the trustee, the creditors, the bankruptcy court, or any other person or entity. That is the court's answer at this time.

Trial Transcript, March 14, 2007, p. 581-582.

     Obviously, the Court did not instruct the jury that Mr. Yao needed to manifest any kind of fraudulent intent vis-à-vis the objects of the bankruptcy. Instead, the Court simply instructed the jury that if Mr. Yao lied with the intent to deceive the trustee, the creditors, the bankruptcy court, or any other person, that he could be convicted. Therefore, as submitted to the jury, this case was nothing more than a false oath case that did not require any intent to engage in the kind of fraudulent conduct that is generally covered by U.S.S.G. §2B1.1. In light of the fact that the statutory index directs that in certain circumstances, U.S.S.G. §2J1.3 is the appropriate guideline to be applied for cases involving convictions under 18 U.S.C. §152 and, given that in this case the Court applied 18 U.S.C. §152(2) as a strict liability/perjury type case without any requirement of an intent to commit some sort of bankruptcy fraud, U.S.S.G. §2J1.3 clearly applies.

C.  **Contrary to the Government's Suggestion, the Evidence in this Case Does Not Support Application of U.S.S.G. §2B1.1.**

In its October 24, 2007 letter, the Government urges application of U.S.S.G. §21B1.1 because, in the Government's words, "the defendant's false testimony was an effort to perpetrate a fraud on the Bankruptcy Court and SFC's creditor's." *See*, Government letter to the Court dated October 24, 2007, p 3. Here, the Government suggests that Mr. Yao's August 28, 2003 lies about a series of SFC wire transfers made almost two (2) years before were intended to maintain control of SFC as a debtor in possession. The Government's argument in this regard suffers from two fatal flaws.

First, there is no legal support for the proposition that the issue of which guideline covers a particular offense turns on evidence and not the statute of conviction and/or the charging document. It is the charging document and not the evidence which determines which Chapter Two Guideline section applies in any given case. On this point, in relevant part, the guidelines state:

> Determine the [appropriate chapter two section] applicable to the offense of conviction (i.e., <u>the offense conduct charged in the indictment</u> . . . of which the defendant was convicted.

U.S.S.G. §1B1.2(a). By pointing to the object, motive and/or intended consequence of Mr. Yao's lies, the Government appears to intertwine and, in fact, confuses concepts of relevant conduct and offense conduct with the determinative notion "offense of conviction."

Second, to the extent Mr. Yao's objective, motive or intended consequences are relevant to the issue of concern, the Government's position is not supported by the trial record. The Government suggests, especially by its reference to Government Exhibit GX4, that Mr. Yao was attempting to maintain control of SFC. However, as was revealed upon cross-examination of Alan Gilbert, counsel to Royal Indemnity Company who took Mr. Yao's Augsut 28, 2007

deposition that prior to the deposition, Mr. Yao and Royal Indemnity (as well as other creditors) agreed to a proposal whereby Mr. Yao would relinquish control of SFC. It was the United States Trustees Office that opposed allowing Mr. Yao to remain in control. Trial Transcript, May 13, 2007, p. 236-239. Therefore, the evidence does not support the Government's factual predicate for application of U.S.S.G. §2B1.1.[5]

The Government also erroneously argues that the "effect" of Mr. Yao's false statements was to hinder SFC's creditors from recovering assets in SFC's bankruptcy proceeding. In doing so, the Government cites Gilbert's testimony for the proposition that the purpose of the deposition was to locate the assets that could be recovered for the benefit of creditors. The Government, however, ignores the absence of an essential component to its argument on this point; specifically, Mr. Yao would have to had known that these assets could have been recovered by SFC's creditors.

There is no evidence from which a jury or, as the Government suggests, "this Court as factfinder for sentencing purposes," could infer that Mr. Yao knew that the assets about which he lied were subject to recovery by SFC's creditors. Therefore, even if appropriate for this Court to look to the trial evidence as opposed to the statute and charging document to determine which guideline section applies, to the extent that the Government suggests that Mr. Yao's lies had some "effect" on SFC's creditors, there is no evidence to suggest that Mr. Yao knew this. At the risk of redundancy, this issue certainly was not presented to the jury as part of its deliberative processes. Accepting the Government's argument in this regard would ignore the manner in which the case was charged (which defines "offense of conviction" for U.S.S.G. §2B1.2 purposes), and the manner in which the case was submitted to the jury, and instead look to an

---

[5] This is not to suggest that anything other than the charging document and statutory language are relevant concerns.

entirely different theory in calculating a defendant's sentence. Interestingly, the Government does not cite any authority for this proposition, for none exists nor could any exist.

### D. Should the Court find that the U.S.S.G. §2B1.1 Applies to This Case, the Court Should Not Apply Any Adjustment for Loss Under U.S.S.G. §2B1.1(b)(1).

Should the Court rule that the offense level is to be determined by reference to U.S.S.G. §2B1.1, under U.S.S.G. §2B1.1(b)(1), the Court must then determine whether there should be any loss related enhancement. Obviously, there can be no "actual loss" in this case since the transfers at issue took place two (2) years prior to the criminal conduct alleged. Therefore, the only concept of loss which could remotely apply in this case would be one of "intended loss." As the Court knows, "intended loss" is defined as "the pecuniary harm that was intended to result from the offense." U.S.S.G. §2B1.1, Application Note 3(A)(ii). Again, in this instance, there is no evidence that Mr. Yao lied on August 28, 2003 with the intent to cause any pecuniary loss to any theoretical or intended victim. In fact, to the contrary, the Government suggests, albeit without factual basis, that Mr. Yao lied to maintain control of SFC.

Relatedly, as to Count 13, Mr. Yao corrected his lie, at least in part, shortly after the deposition. As to Count 14, the only "falsity" related to the beneficiary of the funds sent to Las Vegas casinos. SFC's creditors knew that funds were transferred to Las Vegas. Whether they were for Mr. Yao's benefit or the benefit of his parents would not have in any way effected the creditors ability to collect. In any event, there is no evidence to suggest that Mr. Yao had this, or anything like this, in his mind at the time that he gave his false statements.

In its October 24, 2007 letter to the Court, the Government, in a classic "putting the cart before the horse" argument, suggests that U.S.S.G. §2B1.1 should apply because it considers

concepts of loss which would not be considered under the perjury guidelines. This argument makes no sense.

First, the fact that U.S.S.G. §2B1.1 might contain some consideration for loss does not determine its applicability in the first instance. If it applies, then the Court must consider loss. Additionally, on its face, the Government's argument is flawed. One could envision any number of scenarios outside of the context of a bankruptcy situation where a defendant perjures himself in a manner that would have the effect of some financial benefit to the defendant or financial harm to others. The Government's argument suggests that if there is some financial impact flowing from a defendant's lie, then U.S.S.G. §2B1.1 must apply. This is certainly not the case under the general perjury statutes. Under the basic guideline application model, only U.S.S.G. §2J1.3 applies for convictions under the general perjury statutes, specifically, 18 U.S.C. §1621 and §1622 without regard to the financial effect of the lie at issue.

### III. CONCLUSION

For all of the above reasons, this Court should apply U.S.S.G. §2J1.3. Alternatively, if the Court determines that U.S.S.G. §2B1.1 applies, the Court should find no loss.

Dated: November 19, 2007            Respectfully submitted,

CEDRONE & JANOVE

By: _____
Mark E. Cedrone
Suite 940 Public Ledger Building
150 South Independence Mall West
Sixth & Chestnut Streets
Philadelphia, PA 19106
(215) 925-2500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 19th day of November, 2007, via e-mail, upon the following:

>Shannon Thee Hanson, Esquire
>United States Attorney's Office
>The Nemours Building
>1007 Orange Street, Suite 700
>P.O. Box 2046
>Wilmington, DE 19899-2046
>
>Brian McMonagle, Esquire
>McMonagle, Perri, McHugh & Mischak, P.C
>One Penn Square West
>30 South 15th Street
>Suite 701
>Philadelphia, PA 19102

_____
Mark E. Cedrone