IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA      :
:
v                  :      Criminal No 6-27-GMS
:
ANDREW YAO               :


**DEFENDANT ANDREW YAO'S OPPOSITION TO
GOVERNMENT'S MOTION FOR UPWARD VARIANCE
PURSUANT TO 18 U.S.C. §3553 OR, IN THE ALTERNATIVE,
A DEPARTURE PURSUANT TO U.S.S.G. §5K2.5**

Andrew Yao, by and through his undersigned counsel, hereby responds to the Government's recently filed Motion for Upward Variance and/or Departure.

## I.    INTRODUCTION

On or about March 6, 2008, the Probation Office issued a revised Presentence Investigation Report ("PIR"). The revised PIR follows the Court's determination (embodied in an Opinion dated February 21, 2008) directing that the offense level computation in this case must be made by reference to U.S.S.G. §2J1.3. Using U.S.S.G. §2J1.3 as a starting point and applying, or not applying, certain adjustments (positions to which Mr. Yao has objected as set forth in the Addendum to the Presentence Investigation Report), the Probation Office determined the advisory guideline imprisonment range to be 15-21 months in prison.

Aside from the Government's disagreement with the application of U.S.S.G. §2J1.3, the Government concurs in the Probation Office's guideline calculation. Nonetheless, the Government, being unhappy with this Court's determination, has now sought an upward variance and/or departure [1]

---

[1] As is set forth in the addendum to the PIR, Mr. Yao seeks a downward departure.

In its Motion for Variance or Departure, the Government suggests it proved at trial that Mr. Yao's "material false statements were made in an effort to deceive the Bankruptcy Court, the Trustee, and Student Finance (SFC)'s creditors into believing that defendant, as SFC's sole shareholder and Chief Executive Officer, was a good steward of SFC and to conceal assets." The Government has repeated this mantra throughout the entire litigation process associated with determining which guideline section is applicable to the offense(s) at issue in this case. The Government has chanted this mantra so often it has convinced itself of its accuracy.

The Government seems to suggest that this suggested finding is implicit in the jury's verdict. This is outright wrong. The jury was never asked to consider the purpose behind Mr. Yao's admitted lies. The jury only considered whether Mr. Yao made a material false statement in connection with a bankruptcy deposition.

In the context of this purported factual finding, the Government seeks variance on the theory that the guidelines do not adequately consider the offense conduct. In addition, the Government seeks departure on the theory that the guidelines do not adequately consider the loss to the victim. Both of these arguments are unavailing and the Court should therefore deny the Government's Motion for Upward Variance and/or Departure which is nothing more than a regurgitation of its guideline arguments.

## II.    ANALYSIS

### A.    There Is No Basis To Grant An Upward Variance From The Guidelines.

As stated previously stated, the Government did not prove that Mr. Yao's lies were intended to affect any bankruptcy related concern. Instead, as Mr. Yao testified at trial, and as he maintains today, he lied during the course of the bankruptcy depositions to avoid embarrassing his family by acknowledging that he was having an extramarital affair. The Government,

without any evidentiary support, suggests that Mr. Yao's lies <u>were</u> <u>intended</u> for some more nefarious bankruptcy related purpose. Because of the manner in which the case was submitted to the jury, the Government cannot infer this from the jury's verdict.

Additionally, logic defies the Government's factual premise. For example, if Mr. Yao had intended to deceive anyone for any purpose other than the reasons stated by Mr. Yao, one would expect that documents related to the money transfers which were the specific subject mater of Mr. Yao's lies would have also been falsified or altered. However, no SFC document was altered or falsified in any way by Mr. Yao.

Mr. Yao lied only as to the specific characterization of payments. All of the subject payments, however, were charged to him in his personal capacity, a fact about which he did not lie. None of the subject transfers were charged to SFC as a business expense. Therefore, regardless of the specific use to which Mr. Yao put the money, his creditors certainly knew that Mr. Yao was taking money personally from SFC as shareholder distributions. The fact that Mr. Yao lied about the nature of his specific use of the funds does not change the characterization of the funds being personal funds.

The Government suggests that Mr. Yao lied to establish that he was a good steward for SFC. If anything suggested that Mr. Yao was not a good steward for SFC, it was the fact that at the time the company seemed to be suffering some liquidity problems, he was taking money for personal use.[2]

_____

[2] For example, it is hard to conceive any substantive difference between the truth that Mr. Yao sent some $669,000 to a lady friend as opposed to the lie that this money was someone spent on maintaining a personal aircraft. Either way, SFC's creditors could infer that Mr. Yao was squandering SFC funds.

As the Court knows, the statutorily directed sentencing analysis requires the Court to impose a minimally sufficient sentence to meet the goals of sentencing. 18 U.S.C. §3553(a). In conducting the analysis, the Court is directed to consider seven (7) separate factors, including the Sentencing Guidelines and Policy Statements. 18 U.S.C. §3553(a)(1) – (7). Included in these factors are the Sentencing Guidelines and Policy Statements. 18 U.S.C. §3553(a)(4).

The Government correctly cites the advisory nature of the guidelines. Nonetheless, the "remain an essential tool in creating a fair and uniform sentencing regime across the country and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct. *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006).

> The federal sentencing guidelines represent the collective determination of three governmental bodies-Congress, the Judiciary, and the Sentencing Commission-as to the appropriate punishments for a wide range of criminal conduct. *See* S. Rep. 98-225, at 39 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3222 (declaring Congress's intent to "assure that sentences are fair both to the offender and to society, and that such fairness is reflected both in the individual case and in the pattern of sentences in all federal criminal cases"); S. Rep. 98-225, at 151 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3334 (anticipating that case law developed from appellate review of outside-guidelines sentences "will assist the Sentencing Commission in refining the sentencing guidelines as the need arises"); *see also United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005) ("The Sentencing Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.")

*United States v. Cooper, id.* at 331, n. 10.

More recently, the Third Circuit has noted:

> Although the Guidelines are advisory, they must
> still be afforded due weight as a factor under §
> 3553(a)(4). In addition, the Guidelines continue to
> be a vital force in sentencing as they "reflect a
> rough approximation of sentences that might
> achieve § 3553(a)'s objectives." ("[The
> Commission] has tried to embody in the Guidelines
> the factors and considerations set forth in §
> 3553(a)."); ("The upshot is that the sentencing
> statutes envision both the sentencing judge and the
> Commission as carrying out the same basic §
> 3553(a) objectives, the one, at retail, the other at
> wholesale.").

*United States v. Tomko*, 1498 F.3d 157 (3d Cir. 2007).

In light of these authorities, it is clear there is nothing about this particular case that is so egregious or unusual that would require an upward departure from the guideline range appropriately calculated in the first instance by reference to U.S.S.G. §2J1.3. Regardless of the Court's ultimate guideline determinations, the guidelines certainly capture the harm to be caused by lying in connection with a bankruptcy deposition. As the Court noted in its February 28, 2008 Opinion, the harm to be avoided by criminalizing the conduct at issue in this case is the harm to the fair and proper administration of justice. That is the harm embodied in the perjury guidelines and there is nothing so unique or exceptional about this case that an upward departure is warranted.[3]

---

[3] In its Motion, the Government suggests that Mr. Yao's conduct should be treated more seriously than that governed b the perjury guidelines. In paragraph 7 of its Motion, the Government specifically states that Mr. Yao "not only knowingly lied during his deposition, he affirmatively used those lies in a pleading filed with the Bankruptcy Court to have SFC retain control as a debtor in possession. *See,* Government Trial Exhibit 4, Declaration of Andrew Yao at ¶¶18-19." If the Government believed that Mr. Yao's lies were so problematic, vis a vis, the administration of the bankruptcy estate, to warrant a penalty over and above that called for under the perjury guidelines, the Government certainly could have charged Mr. Yao with filing false statements under 18 U.S.C. §1001. The Government cannot now suggest that Mr. Yao's conduct warrants a sentence consistent with a false statement charge simply because it is unhappy with the Court's guideline determination.

For all of these reasons, the Court should deny both the Government's Motion for Upward Variance or Upward Departure.

**B.      An Upward Departure Pursuant to U.S.S.G. §5K2.5 Is Not Warranted to Account For Loss To The Victim As A Result Of The Defendant's Conduct.**

The Government continues to press the notion that Mr. Yao's misrepresentations resulted in a loss of $819,000 to SFC's bankruptcy estate. From this, the Government argues that because U.S.S.G. §2J1.3 does not contain a specific offense adjustment related to loss that the Court can consider this purported loss as a departure consideration under U.S.S.G. §5K2.5. Although U.S.S.G. §5K2.5 and the cases cited by the Government certainly support the proposition that when a particular guideline does not adequately consider all of the harm caused by the criminal conduct an upward departure may be warranted. In this case, however, both the Government's factual predicate and its legal conclusions relying on that factual predicate are unpersuasive.

First, the Government has continually suggested that Mr. Yao's criminal conduct resulted in a loss of $819,000 to the SFC bankruptcy estate. It is inconceivable how the Government can in good conscience advance this argument. Although money transfers totaling $819,000 were in one sense the subject of Mr. Yao's lies, the money was transferred long before Mr. Yao ever testified in the bankruptcy depositions. As the Government correctly points out, U.S.S.G. §5K2.5, provides as follows:

> If the offense caused property damage or loss not
> taken into account within the guidelines, the Court
> may increase the sentence above the authorized
> range. The extent of the increase ordinarily should
> depend on the extent to which the harm was
> intended or knowingly risked and on the extent to
> which the harm to property is more serious than
> other harm caused or risked by the conduct relevant
> to the offense of conviction.

Parsing of this Policy Statement reveals that this departure concept does not apply in this case. First, there is no loss which has not been taken into account within the guidelines. As stated previously, Mr. Yao transferred the funds in issue long before he testified about their characterization. The Government suggests loss on the false assumption that Mr. Yao intended to impede the bankruptcy estate from collecting the $819,000 which he falsely characterized during his depositions. However, there is no evidence to suggest that Mr. Yao intended to impede the bankruptcy estate from collecting any money. In fact, it would have been in Mr. Yao's interest for this money and any other money to come back to SFC. Again, Mr. Yao made misrepresentations, not for any financial or bankruptcy related purpose, but for the specific purpose of avoiding having to face the embarrassment of admitting to an extramarital affair.

In addition, U.S.S.G. §5K2.5 requires consideration of "the extent of the harm that was intended or knowingly risked." It follows that for this departure concept to apply, the Government would have to satisfy its burden that Mr. Yao lied with the specific intent to prevent the bankruptcy estate from collecting their money. This proposition directly conflicts with the Government's erroneous statement of what it claims it proved at trial concerning the purpose of Mr. Yao's lies. In connection with its variance argument and throughout the post-sentencing litigation process, the Government has maintained that Mr. Yao's lies were intended to deceive the Bankruptcy Court that he was a good steward of SFC. Now, in the context of this departure

argument, the Government, for the first time, suggests that Mr. Yao intended to prevent the bankruptcy estate from collection the $819,000.

In its Motion, the Government cites two Third Circuit cases suggesting that the Third Circuit has authorized the applicability of §5K2.5 departures. Neither of these cases support the Government's argument. First, the Government cites *United States v. Mustafa*, 238 F.3d 485 (3d Cir. 2001). To its credit, the Government correctly points that here the Court of Appeals did nothing other than acknowledge that the District Court granted an upward departure under §5K2.5 in this arson case due to the "extensive damage caused by the fire." *Id.* at 489. The Government also cites *United States v. Maswadeh*, 60 Fed. Appx. 929 (3d Cir. 2003) in which the Court upheld the District Court's imposition of a two level upward departure because the arson guidelines did not adequately take into account the irreparable damage to the historic district of a town resulting from defendant's arson.

Both of these cases are significantly different from the situation presented here. In this case, the Court has determined that Mr. Yao's conduct is governed by the perjury guidelines. The perjury guidelines do not contain any reference to or consideration of losses. This Court has specifically rejected the Government's argument to apply fraud guidelines because doing so is necessary to capture financial loss. Additionally, there was no financial loss in this case and the Government certainly has not proven that Mr. Yao intended any such loss as is specifically required under U.S.S.G. §5K2.5.

Finally, and perhaps most telling of the Government's disingenuity in its efforts to convince the Court to grant an upward departure, the Government repeats the arguments it made in connection with its view that U.S.S.G. §2B1.2 should apply. Specifically, the Government cites *United States v. Holthaus*, 437 F. Supp. 2d 932 (N.D. Iowa 2006), in which the District Court

applied U.S.S.G. §2B1.1 in a bankruptcy fraud case (18 U.S.C. §152(3)). There, the district court properly stated that in calculating the loss under U.S.S.G. §2B1.1, the court should "calculate the actual or intended loss amounts by either using the value of assets concealed or the value of the debtor's liability, whichever is less." However, the court calculated the guidelines by reference to §2B1.1, which does include loss considerations. In this particular case, the applicable guidelines do not include any consideration for loss. In any event, even if loss considerations are to be applied, as Mr. Yao has argued in previous submissions to the Court, this is a no loss case because Mr. Yao's lies were not intended to impede or prevent the bankruptcy estate from collecting those funds.

For all of these reasons, the Court should deny both the Government's Motion for Upward Variance or Upward Departure.

Dated: <u>March 13, 2008</u>

Respectfully submitted,

CEDRONE & JANOVE

By: _____
Mark E. Cedrone, Esquire
Suite 940 Public Ledger Building
150 South Independence Mall West
Sixth & Chestnut Streets
Philadelphia, PA 19106
(215) 925-2500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 13th day of March, 2008, via by the Court's Electronic Case Filing System (EFC), upon the following:

Shannon Thee Hanson, Esquire
Douglas McCann, Esquire
United States Attorney's Office
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

Brian McMonagle, Esquire
McMonagle, Perri, McHugh & Mischak, P.C.
One Penn Square West
30 South 15th Street
Suite 701
Philadelphia, PA 19102

MARK E. CEDRONE